UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
TYRONE SIMMONS,                                  :
                                                 :
              Plaintiff,          :
                                                 :  **MEMORANDUM AND ORDER**
          -against-                      :
                                                 :  10-CV-5815 (DLI)(RER)
WILLIAM C. STANBERRY, JR., *et al.*,             :
                                                 :
             Defendants.        :
------------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

      Plaintiff filed this action against defendants alleging violations of the Copyright Act, as well as state-law claims for breach of contract, unjust enrichment, and unfair competition. (*See* Compl., Doc. Entry No. 1.) Defendant William Stanberry and the entity that he is alleged to control, Apex Productions, LLC d/b/a Apex Productionz (the "Stanberry Defendants"), have failed to appear in this case. Defendants Curtis Jackson, p/k/a "50 Cent" ("Jackson"), UMG Recordings (s/h/a Universal Music Group), Interscope Records, a division of UMG Recordings (s/h/a Interscope Records), Aftermath Records (s/h/a Aftermath Entertainment), Shady Records, and G-Unit Records, LLC (s/h/a G-Unit Records) (collectively, the "Jackson Defendants"), moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims against them in the complaint. (*See* Mot. to Dismiss Counts I, IV, V, and VI, Doc. Entry No. 16.) For the reasons set forth below, the Jackson Defendants' motion to dismiss is granted.

## BACKGROUND

      Plaintiff, a hip-hop artist, contacted Stanberry, a song writer and producer, regarding Plaintiff's interest in one of Stanberry's works. (Compl. ¶¶ 31-32.) Plaintiff and Stanberry reached an agreement whereby Stanberry agreed to sell Plaintiff an "exclusive license" to use the

beats and rhythms known as the "I Get Money Instrumental" (the "Beat"). (Compl. ¶¶ 32-33.) The parties reduced their agreement to writing, wherein Plaintiff paid $600.00 for "Exclusive Rights to 'I Get Money' Instrumental [W]ork" (the "Purchase Agreement"). (Purchase Agmt., Compl. Ex. A.) Plaintiff selected the Beat because he perceived that it would have great market value, if combined with hip-hop lyrics. (Compl. ¶ 36.) As soon as he purchased the exclusive rights to use the Beat, Plaintiff began creating lyrics to combine with the Beat. (Compl. ¶ 41.)

Stanberry assured Plaintiff that the Beat was no longer in use (Compl. ¶ 42); however, the Beat remained listed on a website operated by Stanberry, and eventually fell into the hands of a hip-hop producer known as Scott Muso. (Compl. ¶¶ 42-43.) Without informing Plaintiff or Stanberry, and without seeking their consent, Muso copied the Beat from the website and began distributing it as his own rhythmic compilation. (Compl. ¶¶ 43-44.) Muso then sent a copy of the Beat to an individual associated with Jackson, informing that individual that Muso was the creator of the Beat. (Comp. ¶¶ 45-47.) Jackson, who was interested in the Beat, wrote lyrics to combine with the Beat. The result was a hip-hop song entitled, "I Get Money (Straight to the Bank Pt. 2)" (hereinafter, the "Song").

Shortly thereafter, Stanberry learned about Muso's actions and Stanberry contacted Jackson to inform Jackson that he was the true creator of the Beat. (Compl. ¶ 48.) Stanberry and Jackson entered into several agreements by which Stanberry purported to transfer his copyright interests in the Beat to Jackson. (*Id*.) Jackson and Stanberry reached an additional agreement in which Jackson hired Stanberry to produce the Song. (Compl. ¶¶ 48, 54.)

On June 27, 2007, Stanberry contacted Simmons via email to inform Simmons that Simmons could:

> [P]ick any other beat you want but the "I Get Money" [the Beat] is being used [by] 50 cent for his next single[.] [I] know I'm sorry

> man but this is good news [be]cause [you] can always get a track
> from an official producer. [A] lot of things about to change man, I
> hope you understand this is a once in a lifetime opportunity[.]

(Jun. 27, 2007 Email, Compl., Ex. E.) Simmons declined Stanberry's offer to select another beat and shortly thereafter, Stanberry ceased communicating with Simmons. (Compl. ¶ 50-51.) In September 2007, Stanberry registered the Beat with the United States Copyright Office, listing himself and Mr. Jackson as authors. (Compl. ¶ 55.) Jackson began performing the Song during the summer of 2007, and by the time Plaintiff filed the instant action, Jackson had sold over two million copies of the Song. (Compl. ¶¶ 7-10.)

Plaintiff registered the Purchase Agreement with the United States Copyright Office in December 2010. (Compl. ¶ 60.) Plaintiff then commenced the instant action, alleging claims arising under the Copyright Act and New York state law. The Jackson Defendants seek dismissal of the claims against them, specifically, Counts I, IV, V, and VI.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly*, 550 U.S. at 555.

On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F. 3d 768, 776 (2d Cir. 2002). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F. 3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F. 3d 69, 72 (2d Cir. 1995).

With respect to the instant motion, the Court has considered documents submitted in addition to the complaint, such email exchanges between Simmons and Strawberry, and documents filed with the Copyright Office.

## DISCUSSION

### I. Timeliness of the Copyright Action

Under the Copyright Act, civil actions must be brought "within three years after the claim has accrued." 17 U.S.C. § 507(b). "An ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Kwan v. Schlein*, 634 F. 3d 224, 228 (2d Cir. 2011) (quoting *Stone v. Williams*, 970 F. 2d 1043, 1048 (2d Cir. 1992)); *Brand v. RMM*, 10-CV-0287 (AJP), 2011 WL 1496344, *4 (S.D.N.Y. Apr. 18, 2011) ("A defendant's express assertion of adverse ownership or a plain and express repudiation of plaintiff's ownership such as registering the copyright in defendant's own name, distributing the work with copyright notice identifying defendant as the owner, or exploiting the work for years without paying royalties to plaintiff will trigger the accrual of the statute of limitations.") (internal quotation marks omitted). "By contrast, an infringement action may be commenced

within three years of *any* infringing act, regardless of any prior acts of infringement." *Kwan*, 634 F. 3d at 228 (citing *Merchant v. Levy*, 92 F. 3d 51, 56 (2d Cir. 1996)).

To determine whether a claim is one for ownership or one for infringement, courts look at the complaint as a whole and not simply the causes of action pleaded. *See, e.g.*, *Brand*, 2011 WL 1496344, at *4 ("Although styled as an infringement claim, the gravamen of [plaintiff's] complaint is that he is the owner of the rap lyrics on [defendant's] song."). When the primary issue before the court is whether or not plaintiff has ownership of the work at issue, and not the "nature, extent or scope, of copying," it is said that "ownership forms the backbone of the 'infringement' claim." *Kwan*, 634 F. 3d at 229. The consequences of this determination are grave for plaintiffs. If a claim, however styled, is determined to be one for ownership, and that claim is untimely, courts deem any infringement claims untimely as well because ownership is an underlying element to an infringement claim. *Id*. (explaining that so-called "infringement" claims of this nature "are time-barred as a matter of law where, as here, the underlying ownership claim is time-barred"); *see also Tolliver v. McCants*, 05-CV-10840, 2009 WL 804114, *10 (S.D.N.Y. Mar. 25, 2009) ("Most courts in this District have held that 'where the gravamen of a plaintiff's copyright claim is ownership, and not infringement, the infringement claims are barred if the ownership claim is time-barred' even if the infringing acts occurred within the last three years.").

In the instant action, Plaintiff styled Count One as "Copyright Infringement Under 17 U.S.C. § 501 Injunctive and Declaratory Relief and Damages." (Compl. at ¶ 14.) Despite this title, it is clear that ownership is central to the litigation of this claim. Plaintiff explained in detail the process by which he purchased exclusive rights to the Beat and attached a copy of the Purchase Agreement to the Complaint. (Compl. ¶¶ 32-38.; Ex. A.) Plaintiff discusses the

5

relative rights of the parties with respect to the Beat. (Compl. ¶¶ 39-40, 57.) Plaintiff then discusses Stanberry's efforts to assert his ownership over the Beat. (Compl. ¶¶ 47-49.) In particular, Plaintiff quoted an email from Stanberry to Plaintiff in which Stanberry purportedly revoked any interests in the Beat that he previously had transferred to Plaintiff. (Compl. ¶ 49.)

Moreover, the complaint specifically discussed Plaintiff's ownership throughout. *See* Compl. ¶ 4 ("Despite having previously granted Simmons exclusive ownership and use rights for the [Beat] in the written license agreement, several months later Stanberry purported to still own all of the rights to the Beat . . . ."); Compl. ¶ 40 ("While the License Agreement makes no express reference to the retention of any copyright interest in the work by Stanberry, according to the Copyright Act, an exclusive license for use vests an exclusive licensee with ownership in the copyrighted material . . . ."); Compl. ¶¶ 52-53 (Plaintiff faults the Jackson Defendants for not determining who "created or currently owned the rights to the Beat," when they were "on notice that a controversy existed as to the ownership of rights to the Beat.").

Furthermore, the declaratory relief sought indicates that ownership is central to this litigation. For example, Plaintiff seeks "declaratory relief . . . as to the respective rights of the parties to the [Beat]" (Compl. ¶ 15), as well as clarification as to the "legal rights of Simmons to the Beat" (Compl. ¶ 66). He seeks an order "[d]eclaring and adjudging that the License Agreement is binding and enforceable and that Simmons has exclusive rights to the [Beat] arising out of the License Agreement" (Compl. ¶ 82(a)), and an order "[d]eclaring and adjudging that all transfers or any copyright interest in the [Beat] that occurred subsequent to the execution of the License Agreement are null and void" (Compl. ¶ 82(c)).

It would be disingenuous for Plaintiff now to take the position that ownership is not at issue in this case when clearly it is the "backbone" of the Complaint. Moreover, the Court finds

no legal support for Plaintiff's theory—asserted for the first time in his opposition papers—that Plaintiff, an exclusive licensee, cannot be considered an owner under the Copyright Act. The Copyright Act states that a "Copyright owner with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right." 17 U.S.C. § 101; *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.02[A] ("An exclusive license . . . is equated with an assignment, and . . . is considered to be a 'transfer' of copyright ownership."). Moreover, this position is at odds with the position Plaintiff has taken in the Complaint, wherein he asserted that "an exclusive license for use vests and exclusive licensee with ownership in the copyrighted material." (Compl. ¶ 40.) Thus, Plaintiff, an exclusive licensee, should be considered an owner.

Having determined that Plaintiff's claim resounds in ownership, the Court must determine whether his claim is timely. Plaintiff first learned that his ownership of the Beat was in dispute in the June 27, 2007 email Stanberry sent Plaintiff advising him that he could no longer use the Beat. (Compl. ¶ 49, Compl. Ex. E.) Plaintiff "steadfastly asserted that he retained ownership" but ultimately, Stanberry ceased all communications with Plaintiff. (Compl. ¶¶ 50-51.) These events were sufficient to place Plaintiff on notice that ownership was in dispute and thus, to begin accrual of his claim. "A defendant's express assertion of adverse ownership or a plain and express repudiation of plaintiff's ownership . . . will trigger the accrual of the statute of limitations." *See Brand*, 2011 WL 1496344, at *4. Accordingly, plaintiff's copyright claim is dismissed as untimely.

## II. Plaintiff's State Law Claims

In addition to Plaintiff's federal copyright infringement claim, Plaintiff asserts state law claims of unjust enrichment and unfair competition.[1] State statutory and common law claims are preempted under Section 301(a) of the Copyright Act if: "(1) the work which is the subject of the claim falls within the type of work protected by the Copyright Act under 17 U.S.C. §§ 102 and 103; and (2) the state law claim asserted seeks to vindicate legal or equitable rights that are equivalent to any one of the exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F. 3d 296, 305 (2d Cir. 2004) (citing 17 U.S.C. § 301(a)). "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'" *Briarpatch,* 373 F. 3d at 305 (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F. 3d 841, 848 (2d Cir.1997)).

The Beat satisfies the subject matter requirement, as it is a musical work afforded protection under 17 U.S.C. § 102(a). *Briarpatch,* 373 F. 3d at 305 (explaining that the "subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works"). The question remaining for the court to decide is whether Plaintiff's state law claims fall within the general scope requirement.

The general scope requirement "is only met when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Briarpatch,* 373 F. 3d at 305. This means that the state law claim "must involve acts of reproduction, adaptation performance, distribution or display." *Briarpatch*, 373 F. 3d at 305 (citing 17. U.S.C. §106; *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F. 2d 693, 716 (2d Cir.

---

[1] Plaintiff asserts these claims as well as claims of breach of license agreement and contributory and vicarious copyright infringement against the Stanberry Defendants, who have failed to appear in this case, and whose defenses are not at issue in the resolution of this motion.

1992)). Furthermore, "[i]f an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption." *Samara Bros., Inc. v. Wal-Mart Stores, Inc.,* 165 F. 3d 120, 131 (2d Cir. 1998) *rev'd on other grounds*, 529 U.S. 205 (quoting *Computer Assocs.,* 982 F. 2d, 716; 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B]). In evaluating whether a claim is preempted, the Court must consider "what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Briarpatch*, 373 F. 3d at 306; *see also Computer Assocs.*, 982 F. 2d at 716. Courts in this Circuit "take a restrictive view on what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Briarpatch*, 373 F. 3d at 306; *Nat'l Basketball Ass'n,* 105 F. 3d at 851.

### A. Plaintiff's Unjust Enrichment Claim

As the Second Circuit discussed in *Briarpatch*, an unjust enrichment claim in New York requires proof that: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch*, 373 F. 3d at 306. Here, Plaintiff's unjust enrichment claim is based on the Jackson Defendants' "ongoing, repeating, knowing, willful and/or reckless infringement on Simmons' copyright via release of the First Infringing Recording and Subsequent Infringing Recordings." (Compl. ¶ 99). This claim does no more than to allege Plaintiff's right to protect against the unauthorized use, reproduction, adaptation, and distribution of the Beat, which plainly falls within the general scope requirement of 17 U.S.C. § 106. Additionally, mental states, such as awareness or intent, and the allegation of enrichment do not comprise extra

9

elements that make a state law claim qualitatively different. *See Briarpatch*, 373 F. 3d at 306 (affirming summary judgment on an unjust enrichment claim because the pleading failed to include any elements in addition to that which federal copyright law requires). Plaintiff's unjust enrichment claim consists of no extra elements that would make the claim qualitatively different from a federal copyright claim. The unjust enrichment claim fulfills the general scope requirement of 17 U.S.C § 301, and, therefore, is preempted.

### B. Plaintiff's Unfair Competition Claims

The Plaintiff also asserts claims of unfair competition under New York General Business Law § 360-l and under common law. The complaint states that these claims are based on the Jackson Defendants' "using, recording, releasing, disseminating and publicly performing" the Beat without Plaintiff's authorization and the Jackson Defendants' misappropriation of Plaintiff's "rights in the *I Get Money Instrumental*." (Compl. ¶¶ 104-114).

Under New York law, to allege statutory or common law claims of unfair competition, a plaintiff must establish a valid trademark. *See Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 469-471 (E.D.N.Y. 2008) (discussing the elements of unfair competition claims). For the Beat to be considered a trademark under the Lanham Act, Plaintiff is required to have used the Beat in commerce to identify and distinguish his goods or services from those sold by others and the Beat must serve as an indicator of the source of those goods or services. *See* 15 U.S.C. § 1127. The complaint lacks any allegations of Simmons' use of the Beat and certainly contains no allegations that reflect use of the Beat as a trademark. (Compl. ¶¶ 104-114). Moreover, the "rights" which Plaintiff seeks to vindicate in each claim are equivalent to the exclusive rights vested by the Copyright Act. *See Briarpatch* 373 F. 3d at 305; *see also* 17 U.S.C. § 106. Again, Plaintiff did not allege any extra element that would save his state law

claims of unfair competition from preemption. Rather, he merely characterized his federal copyright claim as claims of unfair competition under state law. Accordingly, Plaintiff's unfair competition claims satisfy the general scope requirement of 17 U.S.C. § 301 and are preempted.

## CONCLUSION

For the reasons set forth above, the Jackson Defendants' motion to dismiss is granted, thereby disposing of the claims against the Jackson Defendants.

SO ORDERED.

Dated: Brooklyn, New York
       March 23, 2012

/s/
DORA L. IRIZARRY
United States District Judge